# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| **DENNY C. CORMIER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:09-CV-68 (HL)** |
| **FRANK D. HORKAN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| **_____** | : | |

## ORDER

Before the Court are Defendants' Motions to Dismiss (Docs. 5, 18, 19, and 29) and Motions to Stay Proceedings (Doc. 6, 21). Also before the Court is Plaintiff Denny Cormier's ("Cormier") Motion for Partial Summary Judgment (Doc. 22) and Motion for Default Judgment (Doc. 24). For the following reasons, Defendants' Motions to Dismiss are granted and Cormier's Motion for Default Judgement is denied. The Motions to Stay Proceedings and the Motion for Partial Summary Judgment are denied as moot.

## I.    BACKGROUND

On June 2, 2009, Cormier, proceeding pro se, filed his Complaint (Doc. 1) alleging numerous constitutional and statutory violations arising out of his divorce trial. The trial occurred in Colquitt County, Georgia. Defendant Frank D. Horkan, Superior Court Judge for the Southern Judicial Circuit ("Judge Horkan") presided.

Cormier alleges that Judge Horkan had a political and working relationship with Dwight May ("Attorney May"), the attorney who represented his ex-wife, Nancy Cormier, in the divorce case.  Cormier claims that because of Judge Horkan and Attorney's May relationship, Judge Horkan made numerous unlawful rulings that violated Cormier's constitutional rights.  (Compl. ¶ 31).  He also alleges that Judge Horkan had a gender bias that favored women.  (Compl. ¶ 29).

In his multi-count Complaint Cormier alleges that Defendants:

1.   Violated his due process rights under the Fifth Amendment (Count One)

2.   Infringed on his Thirteenth Amendment rights (Count Two)

3.   Violated his due process, equal protection, and privacy rights under the Fourteenth Amendment (Count Three)

4.   Violated 42 U.S.C. §1982 (Count Four)

5.   Violated 42 U.S.C. §1983 (Count Five)

6.   Violated 42 U.S.C. §1985 (Count Six)

7.   Violated 42 U.S.C. §1994 et seq., the federal anti-peonage statutes (Count Seven)

8.   Violated the federal and Georgia RICO statutes (Count Eight)

9.   Intentionally inflicted emotional distress upon him (Count Nine)

10.   Tortiously interfered with his economic advantage (Count Ten)

Cormier has brought these ten claims against: (1) Judge Horkan; (2) State of Georgia Governor Sonny Perdue; (3) John B. Alderman, Chairman of Colquitt County Commissioners, Georgia ("Commissioner Alderman"); (4) Colquitt County of Georgia; (5) Nancy B. Cormier; (6) Ann V. Buechler, Nancy Cormier's mother; (7) Attorney May; and (7) Ann V. Buechler Trust and Estate.

He requests that the Court set aside the final judgment of divorce entered by Judge Horkan and award him punitive and compensatory damages in excess of $1,000,000.00 as well as injunctive and declaratory relief.

All Defendants have filed Motions to Dismiss the Complaint.  Cormier has responded to Defendants' Motions to Dismiss and has also filed a Motion for Default Judgment and a Motion for Partial Summary Judgment.

## II.   DISCUSSION

### A.   Motion for Default Judgment

Cormier contends that he is entitled to a default judgment against Commissioner Alderman and Attorney May because they filed their Motions to Dismiss more than twenty days after they were served with the Complaint.

Cormier overlooks the fact that Commissioner Alderman and Attorney May filed timely waivers of service (Docs. 2 and 14).  A defendant has sixty days to answer the complaint or file a motion to dismiss if he has timely waived service. Fed. R. Civ. P. 12(a)(1)(A)(ii).  Commissioner Alderman and Attorney May filed their Motions to Dismiss on July 30, 2009, four days prior to the sixty day deadline.

3

Because they filed timely Motions to Dismiss, Cormier is not entitled to a default judgment.  Accordingly, Cormier's Motion for Default Judgment is denied.

**B.    Rule 12(b)(6) Dismissal Standards**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendants have filed motions to dismiss Cormier's Complaint for failure to state a claim.  When deciding a motion to dismiss, a court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Where a plaintiff is also proceeding pro se, a court must "construe [his] complaint more liberally than [it] would formal pleadings drafted by lawyers."  Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir.1990).

A complaint must be dismissed where the allegations in the complaint, on their face, show that an affirmative defense exists.  Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001).  Another basis for dismissal is where a complaint does not "contain either direct or inferential allegations respecting all the material elements [of a claim]."  Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (quotations and citations omitted).  Finally, if the factual allegations in the complaint do not "raise a right to relief above the speculative level," then the complaint is also due to be dismissed.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007).   The plaintiff must do more than use labels and conclusions, and he must include more than a formulaic recitation of the elements of a cause of action.  Id.

The Court's analysis of whether Cormier's multi-count, multi-defendant Complaint survives Defendants' Motions to Dismiss proceeds as follows: first, the Court discusses the Eleventh Amendment and finds that Judge Horkan and Governor Purdue in their official capacities are immune from Cormier's suit.  Then the Court discusses the absolute judicial immunity standard and finds that Judge Horkan in his individual capacity is entitled to judicial immunity from all of Cormier's claims.  Next, the Court reviews each count of the Cormier's Complaint and finds that as to all remaining Defendants, the Complaint fails to state claims upon which relief may be granted.  As to Cormier's 42 U.S.C. § 1983 count, the Court discusses separately why the count must be dismissed as to each Defendant.  Finally, the Court discusses why equitable relief is not available to Cormier.

### C.     Claims Against Judge Horkan and Governor Purdue in Their Official Capacities

Cormier has not identified in what capacity he is suing Judge Horkan or Governor Purdue.  If he is suing them in their official capacities, then his claims against them are barred by the Eleventh Amendment.  Federal suits against state officials in their official capacities for damages are barred by the Eleventh Amendment unless the state has waived its Eleventh Amendment immunity or Congress has overriden it.  Scott v. Taylor, 405 F.3d 1251, 1255 (11th Cir. 2005).

Congress has not overriden the protections of the Eleventh Amendment for the causes of actions alleged in Cormier's Complaint.  Additionally, Georgia has not

5

waived its sovereign immunity for any of Cormier's claims: Georgia's limited waiver of its sovereign immunity found in the Georgia Tort Claims Act applies to state tort actions brought in state courts, not federal courts.  Ga. Code Ann. § 50-21-23(b).

Cormier asserts that the Eleventh Amendment is not applicable because he asks for injunctive relief pursuant to Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908).  Ex Parte Young established that actions seeking prospective injunctive relief against state actors are not treated as actions against the state.  See Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099 (1985) (explaining that Ex Parte Young found that "official-capacity actions for prospective relief are not treated as actions against the state.").  While Cormier is correct that Ex Parte Young created an exception to the Eleventh Amendment rule of immunity, his claim for injunctive relief fails because, as described further below in this Order, he has not sufficiently alleged a material element necessary to obtain an injunction: a violation of any federal or constitutional law.

Thus, the Eleventh Amendment bars Cormier's claims against Judge Horkan and Governor Purdue for damages in their official capacities.  Cormier's Ex Parte Young claims for injunctive relief against them in their official capacities fails because he has not sufficiently pled a violation of any federal or constitutional law.

**D.    Claims Against Judge Horkan in His Individual Capacity**

Cormier seeks damages from Judge Horkan and asks the Court to enter an injunction against him "to halt further state court orders, to set aside all current state

6

court orders, and to bar [him] from any further statutory or constitutional violations."
The Court construes these allegations to mean that Cormier is suing Judge Horkan
in his individual capacity.

Specifically, Cormier claims Judge Horkan violated constitutional and statutory
law during and after the divorce trial because he:

(1) Denied Cormier's Motion for Revision of Alimony at an in camera
proceeding on May 25, 2004. (Compl. ¶ 37).

(2) Did not allow Nancy Cormier to testify to facts relevant to the claim that she
deserted Cormier. (Compl. ¶ ¶ 41, 42).

(3) Did not order Nancy Cormier to obtain employment. (Compl. ¶ 42).

(4) Did not order Nancy Cormier to produce any documentation regarding her
assets or interest in the Ann v. Buechler Trust fund or her payment of an alleged
mortgage. (Compl. ¶ 43).

(5) Threatened to imprison Cormier if he attempted to remove his case to the
federal court.  (Compl. ¶ 44).

(6) Overruled Cormier's motion for a declaratory judgment.  In the motion for
declaratory judgment, Cormier asked that Judge Horkan find the Georgia alimony
statutes unconstitutional.  (Compl. ¶ 45).

(7) Found Cormier in contempt for not transferring furniture to Nancy Cormier.
(Compl. ¶ 46).

(8) Ordered Cormier incarcerated if he did not pay attorney's fees. (Compl. ¶

47).

(9) Failed to disclose to Cormier that he had named Attorney May his re-election treasurer and campaign manager.  (Compl. ¶ 51).

(10) Ordered Cormier to pay attorney's fees (Compl. ¶ 53).

(11) Proceeded to "rush to judgment" while Cormier's removed federal case was pending and conspired with Attorney May to proceed to trial and to schedule a final judgment.  (Compl. ¶ ¶ 52, 56).

(12) Conspired to make state court awards with Attorney May to the detriment of Cormier.  (Compl. ¶ 54).

(13) Failed to review or rule on Cormier's Writ of Mandamus.  (Compl. ¶ 55).

(14) Failed to recuse himself from Cormier's case.  (Compl. ¶ 58).

(15) Entered a final judgment of divorce on August 1, 2005, while Cormier's removed case was pending.  According to Cormier, the final judgment forced Cormier into a perpetual alimony-peonage contract and he was unlawfully ordered to assume all debts of the marriage.  (Compl. ¶ ¶  61, 62, 63, 64).

(16) Entered the final divorce judgment on August 1, 2005 even though Cormier was not present.  (Compl. ¶ 65).

(17) Denied Cormier's motion for a re-hearing of final decree on August 9, 2005. (Compl. ¶ 66).

(18) Failed to disclose to Cormier that he had a political and working relationship with Attorney May. (Compl ¶ 20, 51).

(19) Domesticated the Georgia final divorce judgment in Virginia (Compl. ¶ 70).

Cormier's suit against Judge Horkan in his individual capacity for damages and injunctive relief is barred by judicial immunity.

### 1.    Judicial Immunity from Claim for Damages

It is well settled that a judge is afforded absolute judicial immunity from damages so long as: (1) his actions were not taken in the complete absence of jurisdiction; and (2) his actions were taken in the course of his judicial capacity. Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) (citation omitted). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Id.

A judge acts in the clear absence of jurisdiction when, for example, he has jurisdiction over only wills and estates, but he tries a criminal case. Stump v. Sparkman, 425 U.S. 349, 356 n. 7, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Whether a judge acts in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity. Sibley v. Lando, 437 F.3d 1067, 1071 (11th Cir. 2005) (citing Scott v. Hayes, 719 F.2d 1562, 1565 (11th Cir.1983).

All of Cormier's allegations against Judge Horkan relate to Judge Horkan's

actions during Cormier's divorce trial.  For these actions, Judge Horkan acted within his jurisdiction and in his judicial capacity.  First, as to whether Judge Horkan acted with jurisdiction, the Georgia Constitution grants superior court judges exclusive jurisdiction over divorce cases.  Ga. Const. art. VI, § IV, Para. I.  Further, Cormier has not argued or alleged in his Complaint that venue was improper in the Southern Judicial Circuit.   Thus, Judge Horkan acted within his jurisdictional scope when he presided over Cormier's divorce trial.

In addition, three factors support a finding that Judge Horkan acted in his judicial capacity.  Regarding the first factor, entering court orders, holding hearings, and making rulings regarding payment of attorneys fees, the scope of testimony, and whether to enter a contempt order are all judicial functions.  Likewise, a judge's decision not to recuse himself is a judicial function.  See Shapiro v. Ingram, 207 Fed. App'x. 938, 940 (11th Cir. Oct. 25, 2006) (unpublished) (stating that one of state court judge's functions was whether or not to recuse herself from the case).  As to the second factor, any action that Judge Horkan took in relation to this case occurred in open court.  Third, Cormier's allegations center around the divorce case pending before Judge Horkan.  Viewing these facts in their totality, the Court finds that Judge Horkan's alleged wrongful actions were taken in the course of his judicial capacity.

Because Judge Horkan was acting with jurisdiction and in his judicial capacity when he took the actions complained of in Cormier's Complaint, the Court finds Judge Horkan is entitled to judicial immunity from damages.

### 2.    Judicial Immunity from Claim for Injunctive Relief

A state court judge is not immune for claims for prospective injunctive relief. Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984). However, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. §1983. If a plaintiff does not allege either, then his complaint must be dismissed. Judge Horkan is entitled to immunity from Cormier's claim for injunctive relief because Cormier did not sufficiently allege that Judge Horkan violated a declaratory decree or that declaratory relief was available.

The pleadings neither allege nor provide grounds to suggest that Judge Horkan violated a declaratory decree. Cormier does contend, however, that declaratory relief was unavailable because the Supreme Court of Georgia declined to review his application for appeal. (Compl. ¶ 49). Despite his contention that declaratory relief was unavailable, he has asked the Court to enter a declaratory judgment against all Defendants. Cormier does not specify what he wishes the contents of the declaratory judgment to be, but regardless, asking this Court to enter a declaratory judgment contradicts his assertion that declaratory relief was unavailable to him. See, e.g., LeClerc v. Webb, 2003 WL 21026709, *4 (E.D. La. May 2, 2003) (finding that plaintiffs failed to plead declaratory relief was unavailable when plaintiffs sought declaratory relief in the district court). In addition, he asserts

in his Complaint that while his divorce case was pending he sought declaratory and mandamus relief from federal courts as well as state courts. (Compl. ¶¶ 36, 40). His seeking declaratory relief in federal and state court prior to filing this Complaint further undercuts his assertion that declaratory relief was unavailable.

The Court finds that Cormier has insufficiently alleged the unavailability of declaratory relief. As a result, his claim for injunctive relief is barred. See Monetero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999) (explaining that failure to allege that declaratory relief was unavailable is fatal to a plaintiff's complaint for injunctive relief against a judge).

Because Judge Horkan is immune in his individual capacity against Cormier's claims for damages and equitable relief, Cormier's entire Complaint against Judge Horkan in his individual capacity is dismissed. The Court next determines whether Cormier's Complaint against the remaining Defendants should be dismissed.

### E.    Count One - Violations of the Fifth Amendment

Count One of Cormier's Complaint alleges Defendants violated his Fifth Amendment due process rights by obstructing efforts to obtain evidence, preventing key evidence to be entered and heard, and by taking his liberty and property. The Fifth Amendment applies only to conduct of federal officials and federal governmental entities. See Porter v. White, 483 F.3d 1294, 1297 n. 1 (11th Cir. 2007) (explaining that plaintiff erroneously invoked the Fifth Amendment when his claims were against a non-federal government official and a non-federal

12

governmental entity).  Cormier's Complaint contains no allegations that federal officials or a federal entity were involved in Cormier's injuries; thus, the Fifth Amendment provides no basis for relief in this case.  The Fourteenth Amendment incorporates the Fifth Amendment's constitutional protections to the states. Cormier's contentions that Defendants violated his due process rights is discussed in the 42 U.S.C. §1983 section of this Order because §1983 provides a cause of action for plaintiffs alleging Fourteenth Amendment violations by state actors. Therefore, Count One is dismissed as to all remaining Defendants because Cormier does not have a cause of action against Defendants under the Fifth Amendment.

### F.    Count Two - Violation of the Thirteenth Amendment

Cormier alleges that all the Defendants violated the Thirteenth Amendment by conspiring to coerce and force him into perpetual bankruptcy, involuntary servitude, and peonage for the collection of unlawful debts.  The unlawful debts he refers to are his alimony obligations imposed on him as part of Judge Horkan's final divorce decree.

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime . . ., shall exist within the United States . . . ."  U.S. Const. amend XIII, § 1.  The purpose of the Thirteenth Amendment "was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War . . . ."  United States v. Kozminski, 487 U.S. 931, 942, 108 S. Ct. 2751,101 L. Ed. 2d 788 (1988).  Involuntary servitude exists when the "victim

had no available choice but to work or be subject to legal sanction." Id. at 943.

   In deciding whether Cormier has stated a claim under the Thirteenth Amendment, the Court is guided by an unpublished decision of the Eleventh Circuit. In Greenberg v. Zingale, the court held that "alimony is not the type of subject matter the Thirteenth Amendment was designed to address." Greenberg v. Zingale, 138 Fed. App'x. 197, 200 (11th Cir. June 20, 2005) (unpublished).  In that case, the court reviewed the Florida alimony provisions and found that they did not permit the use of physical or legal coercion to force people into involuntary servitude. Id. Although consequences for failing to pay alimony included being held in contempt of court, the court determined that the potential consequences did not amount to involuntary servitude. Id.

   Likewise, Georgia's alimony statutes limit the Court's power to enforce alimony orders to "the same extent as is provided by law for contempt of the court in any other action or proceeding cognizable by the court." Ga. Code Ann. § 19-6-28(a).  There is no indication that they allow the use of physical or legal coercion to compel people to work.  Thus, Cormier's claim that his alimony obligations constituted involuntary servitude fails to state a cause of action under the Thirteenth Amendment.[1]  The Court accordingly dismisses Count Two against all remaining Defendants.

_____

[1] The Court's conclusion is the same if the Complaint is construed to allege an as-applied challenge to the Georgia's alimony statutes.  The Rooker-Feldman doctrine bars this as-applied constitutional challenge.  Greenberg, 138 Fed. App'x. at 200.

G.     **Count Three - Violations of the Fourteenth Amendment**

Cormier alleges that Defendants violated his due process, equal protection, and privacy rights under the Fourteenth Amendment.  Specifically, he alleges that Defendants deprived him of equal protection because they had a gender bias against him.

The Fourteenth Amendment, by itself, does not create a cause of action. Hughes v. Bedsole, 48 F.3d 1376, 1383 n. 6 (4th Cir. 1995).  Violations of the Fourteenth Amendment are, however, actionable under 42 U.S.C. §1983.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119-20, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) ("The First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections.").  In addition, there are some statutes enacted by Congress pursuant to Section Five of the Fourteenth Amendment that create causes of action for Fourteenth Amendment violations. See, e.g., City of Boerne v. Flores, 521 U.S. 507, 536, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) (invalidating the Religious Freedom Restoration Act of 1993, a statute passed by Congress pursuant to its remedial powers under Section Five of the Fourteenth Amendment).

Cormier has brought a §1983 claim.  He has not alleged a violation of a

statute enacted under Section Five.   Therefore, later in this Order the Court discusses Cormier's Fourteenth Amendment violations in the context of his §1983 claim.   Otherwise Count Three is dismissed as to all Defendants for failure to state a claim because Cormier does not have a cause of action solely based on the Fourteenth Amendment.

###   H.   Count Four - Violation of 42 U.S.C. §1982

Cormier alleges that Defendants violated 42 U.S.C. §1982 because they deprived him of his property rights and any future rights of conveyance.   Section 1982 provides that "(a)ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."   42 U.S.C. § 1982.   The Supreme Court has held that §1982 "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin."   Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413, 88 S. Ct. 2186, 20 L. Ed. 2d 1189 (1968).

Nowhere in his Complaint does Cormier allege that Defendants discriminated against him on the basis of his race.   Therefore, based on the facts presented in the Complaint, this statute does not afford him a cause of action.   Count Four is dismissed against all remaining Defendants.

###   I.   Count Five - Violation of 42 U.S.C. §1983

Cormier alleges in his Complaint that Defendants violated 42 U.S.C. § 1983 by depriving him of certain constitutional rights including his rights to a fair trial, due

process, equal protection, and privacy.

For a complaint to survive a motion to dismiss a § 1983 claim, the plaintiff must allege conduct taken by a person acting under the color of state law.  Griffen v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  Then the plaintiff must overcome the defense of qualified immunity by showing: first, that the facts viewed in the light most favorable to him establish a constitutional violation by the official; and, second, that the unlawfulness of the official's conduct was clearly established at the time of the incident.  McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009).  In the complaint, a plaintiff is required to allege facts that would defeat the claim of qualified immunity with "some specificity."  GJR Invs. Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir.1998).

The Court dismisses the §1983 claim against all Defendants because Cormier has not shown that the state and local actors committed a constitutional violation and that the private actors acted under color of state law.

### 1.    Governor Purdue

In support of his claim that Governor Purdue is liable under 42 U.S.C.§ 1983, Cormier states that Governor Purdue is responsible for the actions taken by state judges  and "other public officials presiding in more than one county."  In response, Governor Purdue asserts that the §1983 claim should be dismissed because Cormier has failed to state in the Complaint that Governor Purdue committed a constitutional violation.

17

As an initial matter, by operation of separation of powers, Governor Purdue does not supervise the state judiciary.  Cormier's allegation that Governor Purdue "is responsible for actions taken by state judges," as a matter of law, is incorrect, but even if Governor Purdue supervised the state judiciary or had some authority over the state judiciary, Cormier's §1983 claim against Governor Purdue must be dismissed for failure to state a claim.

A supervisory official does not commit a constitutional violation solely on the basis of respondeat superior or vicarious liability.  Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008).  Instead, supervisory liability occurs when the supervisor personally participates in the alleged constitutional violation or when the plaintiff establishes "a history of widespread abuse [which] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so."  Id. (quotations and citation omitted).  Alternatively, liability may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and quotations omitted).

Cormier does not allege in his Complaint that Governor Purdue personally directed Judge Horkan to act unlawfully and it does not allege that Governor Purdue personally participated in his divorce case.  Cormier also does not contend that there

was a widespread abuse of the state judicial system, and he does not contend that a policy or custom of Governor Purdue's violated his rights.

Because of these failings, Cormier's Complaint insufficiently alleges that Governor Purdue committed a constitutional violation. Accordingly, the Court grants Governor Purdue's Motion to Dismiss the §1983 claim.

### 2. Commissioner Alderman

Cormier alleges that Commissioner Alderman is liable under §1983 because he represents Colquitt County and is the responsible party for providing judicial services to Judge Horkan. In response, Commissioner Alderman contends that it is an unwarranted deduction of fact that Commissioner Alderman supervised Judge Horkan and regardless, that he is immune from suit in his individual capacity under the Speech and Debate Clause of the United States Constitution.

First, the Court finds that even if Commissioner Alderman was a supervisor to Judge Horkan, Cormier's Complaint does not adequately allege grounds for supervisory liability under §1983. He does not allege that Commissioner Alderman directed Judge Horkan to act unlawfully. There is no allegation that Commissioner Alderman participated in the divorce proceedings and there is no allegation that there was any widespread abuse in the superior court of which Commissioner Alderman should have known. Moreover, there is no allegation, aside from his assertion that Commissioner Alderman provided judicial services, that he maintained a policy that was indifferent to constitutional rights.

Second, Commissioner Alderman is entitled to immunity from Cormier's claim to the extent that it alleges that Commissioner Alderman is directly liable for providing judicial services to Judge Horkan.  Cormier does not explain in his Complaint what constitutes "judicial services," but the Court believes that Cormier is referring to Commissioner Alderman's authority to provide financial support to Colquitt Superior Court.  Local legislators are entitled to legislative immunity for their budgetary decisions for funding the county.  Woods v. Gamel, 132 F.3d 1417, 1420 (11th Cir. 1998).  Because any direct liability claim against Commissioner Alderman is barred by legislative immunity, Cormier's § 1983 claim against Commissioner Alderman is dismissed.

### 3.    Colquitt County

Cormier alleges that Colquitt County is liable under §1983 because it "provided essential judicial services for Defendant Horkan" and "furnished the Defendants with law enforcement and imprisonment facilities."  Cormier's §1983 claim against Colquitt County is dismissed.

To state a § 1983 claim against a municipality, the plaintiff must allege that the constitutional deprivation was pursuant to an official governmental policy or custom.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Once a policy or custom is alleged, then the plaintiff must then allege that the policy or custom caused the constitutional violation.  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  He must allege that the

policy or custom was "highly likely to inflict the particular injury." Id. (quoting Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 411, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)).

Cormier's Complaint does not contain sufficient facts that show Colquitt County's budgetary decisions and decision to provide law enforcement and imprisonment facilities caused any constitutional violations. All Cormier has alleged is that Colquitt County provided judicial services and law enforcement and imprisonment facilities. The mere existence of these practices does not establish that they are unconstitutional. He has not shown that the County's decisions were "highly likely" to cause him injury. The §1983 claim against Colquitt County is dismissed.

### 5.     Private Actors - Attorney May, Nancy Cormier, Ann Buechler, Ann V. Buechler Trust and Estate

The Supreme Court has stated that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L. Ed. 2d 130 (1999) (citations and quotations omitted). Cormier has made conclusory allegations that the private actor Defendants acted under color of state law. As a result, his § 1983 claim against them must be dismissed.

If a private citizen conspires with a state actor, then the private citizen acts under color of state law and is subject to §1983 liability. Rowe v. City of Fort

Lauderdale, 279 F.3d 1271, 1285 (11th Cir. 2002) (citation omitted).  The plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights.  N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990) (citation omitted).  In conspiracy actions, more than mere conclusory notice pleading is required.  It is insufficient to simply allege that a conspiracy existed.  Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984).

Cormier's Complaint makes allegations that all Defendants conspired to deprive him of his constitutional rights.   The Court addresses the conspiracy allegations against each private actor Defendant separately.

Cormier's allegations against Nancy Cormier assert that she conspired to violate his civil rights.  There are no facts in the Complaint showing that she reached an understanding with Judge Horkan or with the other Defendants to deprive Cormier of his constitutional rights.  Because Cormier has only made a conclusory conspiracy allegation against Nancy Cormier, he has insufficiently alleged the existence of a conspiracy and the §1983 claim against Nancy Cormier is dismissed.

Likewise, Cormier's §1983 against Ann Buechler must also be dismissed because the only references to her engaging in a conspiracy are found in the title of count five, which asserts a §1983 claim against all the Defendants, and in count six, in which he alleges that Defendants conspired to deprive him of his constitutional rights.   Because Cormier has not alleged that Ann Buechler entered into an agreement to conspire with any Defendant, and because he has not stated any facts

sufficient to support the existence of an agreement, he has insufficiently alleged a conspiracy.  His §1983 claim against Ann Buechler is dismissed.

Cormier's allegation against the Ann V. Buechler Trust and Estate is based on Nancy Cormier's alleged interest in the trust fund.  According to Cormier, Judge Horkan did not compel Nancy Cormier to produce documentation regarding her interest in the trust fund.  Cormier does not allege that a representative acting on behalf of the trust entered into an agreement to violate Cormier's constitutional rights and the Court cannot find any facts in the Complaint supporting the existence of an agreement.  Because of these deficiencies, the § 1983 claim against Ann V. Buechler Trust and Estate is dismissed.

As for Cormier's conspiracy claim against Attorney May, it alleges that Attorney May engaged in quid pro quo activities with Judge Horkan depriving Cormier of his rights to due process and equal protection.  The claim also alleges that Judge Horkan and Attorney May conspired to award Attorney May attorney's fees.  Throughout his Complaint Cormier states that Judge Horkan made judicial rulings with the ex parte assistance of Attorney May.

The facts in the Complaint supporting the existence of the conspiracy between Attorney May and Judge Horkan are that Attorney May was the treasurer and campaign manager for Judge Horkan, that Judge Horkan and Attorney May were business and law partners, and that neither Attorney May nor Judge Horkan disclosed their relationship to Cormier. Viewing these facts in the light most

23

favorable to Cormier, it is apparent from the Complaint that Judge Horkan and Attorney May had a working and political relationship where Judge Horkan benefitted from Attorney May's services as a treasurer and campaign manager.

The Court finds a case with similar facts decided by the district court for the District of Massachusetts persuasive in deciding whether Cormier has sufficiently stated a claim of conspiracy against Attorney May.  In Hamilton v. Arnold, 135 F. Supp. 2d 99, 103 (D. Mass. 2001), the court found that there was evidence that a judge and an attorney were close personal friends, who at times improperly flaunted their relationship, and may have engaged in inappropriate behavior during the plaintiff's divorce trial.  Nevertheless, the evidence was not circumstantial evidence of an agreement to conspire to deprive the plaintiff of his constitutional rights. Following the reasoning in Hamilton v. Arnold, this Court finds that Judge Cormier and Attorney May's relationship is a fact that does not support the inference that there was an express or implicit agreement between them to deprive Cormier of his constitutional rights. Without facts showing the existence of an agreement, the allegation that Attorney May entered into a conspiracy is mere speculation.

Thus, because Cormier has insufficiently pled facts to support the existence of a conspiracy between Attorney May and Judge Horkan, Cormier's §1983 claim against Attorney May is dismissed.

**J.     Count Six - Violation of 42 U.S.C. § 1985**

Cormier contends that Defendants conspired to deprive him of his

constitutional rights in violation of 42 U.S.C. § 1985.  The elements of a cause of action under the conspiracy section of § 1985, are: (1) a conspiracy; (2) that exists for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act taken in furtherance of the conspiracy, (4) and a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002) (quotations and citation omitted).  A plaintiff must also show that the defendants were motivated by racial or class-based discriminatory animus.  Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971).

As already explained by the Court, Cormier has failed to allege sufficient factual allegations showing the existence of a conspiracy between Defendants.  For that reason, his §1985 claim is dismissed.  Another basis for dismissal is that he has not alleged that Defendants were motivated by a racial or class-based motive.  His allegation that he was discriminated on the basis of sex was limited to Judge Horkan and he did not allege that the other Defendants were motivated by an impermissible sex bias.  Thus, for either of these reasons, Count Six is dismissed.

### K.    Count Seven - Violation of 42 U.S.C. §1994 et seq.

The Anti-Peonage Act, 42 U.S.C. § 1994 et seq., implements the Thirteenth Amendment.  Davis v. Hudson, 2006 WL 1089510, *3 (10th Cir. Aug. 4, 2000) (citation omitted).  Because Cormier's Complaint fails to state a cause of action

under the Thirteenth Amendment, it likewise fails to state a cause of action under 42 U.S.C. § 1994.  Count Seven is dismissed as to all Defendants.

### L.    Violations of Federal and Georgia RICO Statutes

Cormier alleges that Defendants violated the federal and Georgia RICO statutes "through oppressive misuse of the Georgia alimony statutes and for collection of unlawful debts."  He claims that Defendants' conduct "has an extortionate quality that gives it the rancid flavor of unfairness."

A civil claim under the federal RICO Act requires proof of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Langford v. Rite Aid of Alabama, Inc., 231 F.3d 1308, 1311 (11th Cir.2000). Racketeering activity is defined as including any act enumerated within 18 U.S.C. §1961(1). Id. at 1312 (citation omitted).

The imposition of alimony does not fall within the many acts that constitute racketeering activity under §1961(1).  Therefore, Cormier's federal RICO Act claim is dismissed for failure to state a claim.

Under the Georgia RICO statute, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." Ga. Code Ann. §16-14-4(a).  The phrase racketeering activity is defined as including any act identified in Ga. Code Ann. § 16-14-3(9)(A).

Likewise, Cormier has failed to allege a predicate act that constitutes racketeering activity under the Georgia RICO statute. Thus, his Georgia RICO claim fails to state a cause of action and Count Eight is dismissed as to all defendants.

### M.    Count Nine - Intentional Infliction of Emotional Distress

Cormier contends that Defendants have intentionally inflicted emotional distress on him because they intentionally violated his constitutional rights. He states that as a result of their actions, his children have become alienated from him, and he has suffered severe emotional distress.

Under Georgia law, to state a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that "(a) the conduct giving rise to the claim was intentional or reckless, (b) the conduct was extreme and outrageous, (c) the conduct caused the emotional distress, and (d) the emotional distress was severe." Ashman v. Marshall's of MA, Inc., 535 S.E.2d 265, 267 (Ga. Ct. App. 2000).

The Court finds that Cormier's Complaint alleges no outrageous conduct on the part of Defendants. The possible outrageous conduct found in the Complaint is the alleged conspiracy that existed between Defendants, but as the Court has already found, Cormier has failed to state a claim that Defendants conspired against him. Because his allegations regarding a conspiracy fail, the Court likewise finds that Cormier has insufficiently pled the existence of outrageous conduct. As a result, his claim for intentional infliction of emotional distress is dismissed as to all Defendants.

### N.    Count Ten - Tortious Interference with Business Relations

Cormier's last claim alleges that Defendants interfered with his business relations because they in an arbitrary and capricious manner and with malicious intent, interfered with his economic advantage causing him irreparable financial harm.  He also alleges that they breached their fiduciary duties as public officials causing him harm.

To recover under a theory of tortious interference with business relations (economic advantage), a plaintiff must show the defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a *third party or parties* not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury.  Renden, Inc. v. Liberty Real Estate Ltd. P'ship III, 444 S.E.2d 814, 817 (Ga. App.1994) (emphasis in original).

Cormier's Complaint fails to allege that he had a business relationship with which the Defendants interfered.  Although he states in his Complaint that he is a physician, there is no allegation that he practices medicine, or if he does, that his practice of medicine has suffered as a result of Defendants' actions.   The Court must accordingly dismiss Count Ten against all Defendants for failure to state a claim.

### O.    Requests for Injunctive and Declaratory Relief

Cormier's requests for injunctive and declaratory relief should also be dismissed as to all Defendants.  Cormier asks the Court to: (1) enjoin Defendants

28

from any further statutory or constitutional violations; (2) order injunctive relief and declaratory judgment; and (3) order that the final divorce judgment be set aside.

To receive declaratory or injunctive relief, a plaintiff must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and that there is an inadequate remedy at law.  Bolin, 225 F.3d at 1242.  The first factor requires that a plaintiff articulate a basis for relief that would withstand dismissal under Federal Rule 12(b)(6).  Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097-98 (11th Cir. 2004).

The Court finds that all of Cormier's allegations in his Complaint fail to state a claim upon which relief may be granted and must be dismissed.  As a result, Cormier has not satisfied the first factor necessary to obtain injunctive or declaratory relief.  The Court dismisses his requests for injunctive or declaratory relief.

## III.    CONCLUSION

For the explained reasons, Cormier's Complaint is dismissed as to all Defendants.  The Motion for Default Judgment is denied.  The Motions to Stay Proceedings and for Partial Summary Judgment are denied as moot.

**SO ORDERED**, this the 11th day of February, 2010.


                                        _s/  Hugh Lawson_____
                                        **HUGH LAWSON, SENIOR JUDGE**

lmc